## WOODMEN OF THE WORLD LIFE INS. SOC. v. SOSEBEE et al.

### No. 3979.

Court of Civil Appeals of Texas. El Paso.

Sept. 19, 1940.

Rehearing Denied Oct. 10, 1940.

Thomas & Thomas, of Anson, for appellant.

Smith & Smith, of Anson, for appellees.

PRICE, Chief Justice.

Plaintiffs, as the heirs of Homer Sosebee, deceased, instituted this action in the District Court of Jones County against Woodmen of the World Life Insurance Society, as defendant, on a certificate or policy issued by the Woodmen of the World on his life. Trial was to a jury on special issues. Judgment was entered on the verdict in favor of plaintiffs, and defendant has perfected this appeal.

Beyond question if the policy was in force on the date of the death of Homer Sosebee, plaintiffs had the right to recover thereon.

Homer Sosebee died on the 3rd day of January, 1938.

Determination of two questions raised by the brief of appellant will dispose of this appeal: First, did, prior to the death of the insured, the policy lapse and terminate on account of failure to pay the premium due thereon on or before the last day of March, 1932? Second, did the Court err in allowing Marvin Sosebee to testify as to a purported letter written by the witness to the defendant's agent, V. A. Eblen?

The pleadings of the parties were sufficient to raise all of the matters hereinafter discussed. The evidence is prac-

tically undisputed—however, insufficient as a matter of law to establish the facts beyond issue.

The policy sued on was issued to Homer Sosebee in December, 1913, at Paducah, Texas. It contained a provision for the automatic lapsing of the policy for failure to pay all dues and assessments on or before the last day of the month of their accrual. The policy was issued by a fraternal benefit society, the constitution and laws of which provided that no subordinate body, subordinate officer or member should have the power to·waive any of the provisions of the constitution and laws of the society. The provision before referred to as to payment of assessments and dues was likewise a part of the constitution and laws of the Order and a part of the contract here in question. Beyond any question Art. 4846, R.S.1925, applied to the policy in question.

The dues and assessments for the month of March, 1932, on the policy were not paid on or before the last day of that month. Appellant, who will hereinafter be referred to as defendant, contended that the policy thereby automatically lapsed, and from shortly after March, 1932, has consistently at all times taken that position.

In regard to this failure, plaintiffs by pleading alleged that prior to the accrual of said dues for said month that it was agreed by and between Marvin Sosebee and V. A. Eblen, the clerk of the local Lodge charged by defendant with receiving and collecting dues and assessments from members, that thereafter the said Eblen would draw a draft therefor, when same became due, on said Sosebee's bank in Anson, Texas; that the said agent of defendant failed to so draw the said draft; that if same had been drawn it would have been promptly paid; that he relied on the agreement of Eblen to draw the draft, and but for such reliance would have paid such dues in accordance with the assessment; that if the draft had been drawn the dues would have been paid; that as soon as it was learned that Eblen had not drawn the draft as promised, the dues were tendered to the defendant through Eblen; that from time to time as they accrued plaintiffs have tendered the dues to the defendant and defendant has refused to accept same.

A brief statement of the evidence as to the payment of dues and assessments accruing on this policy will aid in the discussion of the questions involved. From the date of the issuance of the policy up to 1928 Homer Sosebee paid the dues thereon at times and in amounts satisfactory to defendant. These payments were made to the clerk of the local Camp at Paducah, Texas. In 1928 Homer Sosebee's mind failed and he was committed to an institution in San Antonio for care and treatment; thereafter two of his brothers for sometime paid the dues and assessments on the policy; then Marvin Sosebee, another brother, undertook to make payments. He paid the assessments by his check, at times paying two or three months in advance. On January 8, 1932, he paid to Eblen the dues for January and February, 1932, by his check. In the letter transmitting said check he made the request of Eblen that thereafter Eblen draw on him for the dues through the bank at Anson, Texas. Eblen promptly replied in substance that he had communicated with the bank and the arrangement was satisfactory. Eblen did not draw the draft for the dues for March, 1932. Had the draft been drawn it would have been promptly paid. On April 26, 1932, Sosebee received a letter from Eblen apprising him that the March dues had not been paid. Immediately on receipt of the letter Sosebee sent Eblen a check covering the March and April dues. On May 1, 1932, Eblen sent Sosebee a receipt for the March and April dues. Eblen forwarded these dues to the defendant. Defendant in due time returned same to Eblen and Eblen tendered same to Sosebee.

Beyond any question the constitution and by-laws of the defendant Order were binding on the policy holders. No subordinate body nor officer thereof had the power to alter, vary or modify same. The certificate and the constitution and laws provided for the automatic forfeiture of the policy for failure to pay the dues in the time prescribed. The constitution and by-laws in accordance with Art. 4846, R.S.1925, provided that no subordinate body nor member could alter or waive same. If the action charged against Clerk Eblen in any way was in violation of the constitution and laws, in that it altered or varied the contract, then it could not operate as a waiver or estoppel. It lacks efficacy as a waiver because it was without authorization; lacks efficacy as an estoppel because there being no authority and plaintiffs, being

charged with notice of such lack of authority, could not be misled thereby. The requirement of the contract was that payment must be made on or before the last day of the month. By express provision it was beyond the power of Eblen to either waive or alter this provision. His authority was to collect, receive and transmit the amounts due under the contract. This authority he derived from the defendant. If this be true, he was an agent of the defendant, an agent with a narrow and limited authority, but an agent nevertheless. It is true that he was without authority to collect after the thirty days contemplated had expired, but within that thirty days he had the power and duty to receive and collect for the defendant.

■ The manner of receiving and collecting was not prescribed in the constitution and laws or the certificate. A strict construction of the authority would be that he could only receive cash. Such a construction would absolutely ignore the surrounding facts and circumstances and the usual and customary way of doing business of this character. Of course, from time to time he took the checks of the members for their dues. Taking checks involved the duty of presenting same to the bank for payment. This duty we think he owed to the defendant.

Under the facts and the verdict, however, we have a somewhat different question involved. Instead of a written order on his bank Sosebee authorized him to make a written order on the bank instead of giving him a check. Eblen, after communicating with the bank, indicated his assent thereto. Drawing and presenting the draft was perhaps as convenient as presenting a check. This arrangement, perhaps, conduced to the convenience of each party. Incidental to the authority to receive and collect, we think likewise Eblen had the implied authority to make any reasonable arrangement to facilitate his performance of this duty, provided this authority was not expressly withheld from him. Likewise, we think, the power to accept payments included the power to accept conditional payment. An illustration of this power is the receipt by the agent of the debtor's check. Payment is conditioned on the payment of the check.

While the agency of Eblen was limited and special, when acting within the scope thereof his acts were the acts of the defendant. Sovereign Camp, W.O.W. v. Piper, 5 Cir., 93 F.2d 354; Modern Woodmen of America v. Harper, 127 Tex. 489, 94 S.W.2d 156; Johnson v. Sovereign Camp, W.O.W., 125 Tex. 329, 83 S.W.2d 605.

Johnson v. Sovereign Camp, supra, has much in common with the instant case. It is true that there the practice of having the clerk apply to the bank for payment had subsisted for a long time. Here, the representative of the defendant made a written representation that he would make demand on the bank. This promise was relied upon. Under the contract if it had been fulfilled the March payment would have been paid. In Johnson v. W.O.W. it was held that the Society was estopped, not on the ground of any actual or presumed notice of the Sovereign Camp of the conduct of the agent, but on account of the fact that the clerk was its agent. The clerk, by his conduct, acting in behalf of the Society, created duties to the plaintiffs. The duty was something more than to merely receive and transmit the premiums. This duty arose by reason of the conduct of the agent alone.

The case of Sovereign Camp, W.O.W. v. Newsom, 142 Ark. 132, 219 S.W. 759, 14 A.L.R. 903, is strongly persuasive here. There, the dues were paid by the agent of the Society drawing a draft on assured. The agent failed to draw for the March assessment and same was not paid in the time provided. It was held that the Society was estopped to forfeit on account of non-payment. Further, the facts being established, an instructed verdict was justified. This case has been followed by a long line of decisions in Arkansas and several other states.

■ We think also the principle announced in McCorkle v. Texas Benevolent Ass'n, 71 Tex. 149, 8 S.W. 516, applies here. In that case a general agent acted. But it is only a question of authority. Acts of an agent within the authority delegated are the acts of the principal. Within the thirty days contemplated there was no restriction placed on Eblen as to the place, manner or mode of collecting and receiving payment.

The cases cited by appellant on the proposition in substance that plaintiffs utterly failed to make a case have received our careful consideration and study. We believe all are distinguishable from the instant case. We shall not prolong this opin-

ion with a detailed discussion, but confine ourselves to one case.

Appellant forcefully asserts that the case of Sovereign Camp, W.O.W. v. Moraida, 131 Tex. 250, 113 S.W.2d 177, is conclusive on this point. In that case the collecting agent, without notice to or authorization from the Sovereign Camp, undertook to extend the time of payment of the monthly dues. This action was contrary to the constitution and laws of the Society, and hence not binding on the defendant therein. In our opinion there is no conflict between that case and the case of Johnson v. Woodmen, supra. In the former case the agent was acting entirely without the scope of his authority; in the latter the action was within the scope of the authority of the agent.

All assignments of error as to failure to grant instructed verdict or judgment non obstante veredicto are overruled.

In our opinion a judgment in favor of plaintiffs can only be sustained on the finding that Eblen made with Marvin Sosebee the agreement alleged and submitted. The allegations of plaintiffs' petition fail to show whether such agreement was oral or written.

If agreement there was between Marvin Sosebee and defendant's agent, it was evidenced by the letter of Marvin Sosebee to said agent and the reply. The reply was in evidence and was as follows:

"I will be very glad to draw on you and the bank said it would be O. K.

"Thank you very much.

"V. A. Eblen."

The witness testified that the above letter was in reply to a letter written by him to Mr. Eblen. In seeking to lay a predicate for parol evidence of his letter to Eblen the witness testified that he had been unable to secure the original; he had visited Mr. Eblen's home at Paducah and made inquiry for Eblen, but at that time Eblen was not at home, and he talked to Mrs. Eblen. There was objection to what Mrs. Eblen said, and witness did not testify as to same. He further testified he had made an effort to obtain the letter. Counsel then in open court made demand on defendant to produce the letter. Counsel for defendant then stated that it was the first time it had been apprised that any such letter had been written and it had no such letter in its possession and no notice had been given to produce such letter. Witness was then asked to state the contents of the letter. Defendant then interposed these objections: "The defendant excepts further to the witness undertaking to testify as to the contents of a letter written by himself to the Clerk of the Local Camp at Paducah, Texas, for the reason that this defendant was never apprised that the plaintiff would undertake to introduce any such letter, or the contents of any such letter, or even that such letter was written, until counsel undertakes to admit such testimony during the trial of this case. The defendant has had no notice whatever to produce the original of such letter, and had no opportunity whatever to make any investigation in regard to any such letter, or to prepare its defense to meet the contents of any such letter, and at the time of the making of this objection, has no idea as to what the contents of the letter may be; and it is wholly a self-serving declaration on the part of one of the plaintiffs in this case. The letter itself would be the best evidence, and it is not binding on this defendant under the Constitution Laws and By-Laws of this Society and the contract sued on; wholly inadmissible for any purpose."

These objections were overruled and defendant excepted.

The witness testified as follows: "I wrote Mr. Eblen about the first of January, 1932, sending him a check to pay two months dues for Homer V. Sosebee, and at the same time requesting Mr. Eblen that for subsequent months that he draw a draft on me, through the bank here at Anson, to pay the monthly dues each month, as they accrue, and in reply in sending me the receipts back, his letter is attached to the receipts sent to me."

In order to introduce secondary evidence of a written document charged to be in the possession of an adverse party, a reasonable notice to produce same must be served on such party. There are exceptions, or apparent exceptions, to the rule, such as where the pleadings contain such notice or where by the very nature of the suit said party is charged with the possession thereof. The reasonableness of the notice depends on the surrounding conditions. If the document is then in the immediate control and possession of such party, then notice at the trial would seem to be sufficient. Wigmore, 3rd Ed., Vol. 2, Sect. 1204. The purpose of the requirement is to afford the party time and opportunity to produce same from his pos-

session. If there is a denial of possession it would seem that notice in the course of the trial should be sufficient. Gainer v. Cotton, 49 Tex. 101, Syllabus 11; Dunbar v. United States, 156 U.S. 185, 15 S.Ct. 325, 39 L.Ed. 390; Fowler Paper Co. v. Jones Sales Book Co., 183 Ill.App. 310.

Of course, as stated in Dunbar v. United States, supra, where there is a denial of possession the existence of the document is an issue in the case.

■ The objections as made, we think, only challenge the predicate for the admission of the ground for failure to serve notice to produce. No objection was made to the witness's statement that he was unable to obtain the letter. He said he had gone from Anson to Paducah to obtain the letter, inquired of Eblen's wife. If the objection had been made that he had shown no proper diligence to obtain the original, the predicate might have been more complete. We are inclined to the belief that even though this objection had been made the showing was sufficient. The letter had been mailed to a point outside the jurisdiction of the court. If in Cottle County a subpoena duces tecum could not legally compel its production in the District Court of Jones County. Sayles v. Bradley & Metcalf Co., 92 Tex. 406, 49 S.W. 209; Missouri, K. & T. Ry. Co. v. Dilworth, 95 Tex. 327, 67 S.W. 88.

However, this is perhaps beyond the issues here involved. The only objection as to the lack of predicate was the failure to give defendant a notice to produce. In reply to the notice to produce defendant did not object on account of lack of time, but denied possession. If additional time had been given there is no evidence that the defendant could or would have produced the letter.

The cancelled check for the payment of the January and February dues of 1932 and the receipt therefor were in evidence.

We overrule the assignments presenting this matter.

There is an assignment questioning the correctness of the court's action in overruling a special demurrer to plaintiff's allegations as to penalty and attorneys' fees.

The first amended petition of plaintiffs as to penalty and attorneys' fees is as follows: "Plaintiffs would further show to the Court that the notice of the death of the insured and the claim for the insurance has been filed with the defendant for more than 30 days before the filing of this suit and that the defendant denied liability and wholly repudiated and breached, or attempted to breach, its said contract, and plaintiffs have elected and now declare that they are entitled to a 12% penalty against the defendant for failure in refusing to pay said claim, and the 12% penalty is recoverable against the defendant * * *; that they had contracted and agreed to pay said attorneys a reasonable fee for their services, and would further show to the Court that $300 would be a reasonable attorney's fee in this cause."

To this pleading defendant addressed the following special exceptions, Nos. 9 and 10: "9. This defendant specially excepts to Section 7 of said petition wherein plaintiffs allege they are entitled to recover attorneys' fees and 12% penalty against this defendant for the reason 'that, under the laws of this State, the plaintiffs do not therein allege facts which enable or entitle them to recover attorneys' fees or penalty against this defendant."

Special exception ten is not reproduced because it is practically the same as No. 9.

These exceptions were overruled, as shown by the judgment of the Court, over the exception of defendant.

■ Article 4831a, Vernon's Annotated Civil Statutes, is applicable here as defendant is a fraternal benefit society. It provides, in substance, in all cases where a loss occurs and the Society liable therefor shall fail to pay the same within sixty days after the demand therefor, such Society shall be liable to pay the holder 12% damages on the amount of the loss, together with a reasonable attorney's fee. Generally speaking, statutes providing for penalty and attorney's fees on failure to pay an insurance policy are penal in their nature and are to be strictly construed. Mutual Life Ins. Co. v. Ford, 103 Tex. 522, 131 S.W. 406; National Casualty Co. v. Mahoney, Tex. Civ.App., 296 S.W. 335; Southland Life Ins. Co. v. Dunn, Tex.Civ.App., 71 S.W.2d 1103.

■ Now the averment that they had failed to pay after demand for more than thirty days is not tantamount to an averment that they had failed to pay within sixty days. More than thirty days may be more than sixty days and it may be less. It is true that the special exceptions as to this matter in form are simply general demurrers, but in our opinion the averments quoted and the entire petition fail to aver

an unequivocal demand for payment and a failure for sixty days to comply therewith. The original petition of plaintiffs appears in the transcript. The file mark was introduced in evidence, but not the petition itself, as we understand it. The original petition cannot be used in aid of the averments of the trial petition.

There was error in overruling defendant's special exceptions.

It appears that the 12% penalty awarded amounted to $100.88, and attorneys' fees were allowed in the sum of $250. If appellees file a remittitur of said amounts, together with interest accrued thereon, within twenty days from the date of the handing down of this opinion, the judgment will be affirmed; otherwise same is reversed and remanded.